UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) No. 1:11-cv-00370-JMS-TAB |
| TIMOTHY S. DURHAM,<br>JAMES F. COCHRAN,<br>RICK D. SNOW, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Intervenor. | ) |

## ORDER

Over five years ago, a jury found now *pro se* Defendant Timothy S. Durham[1] guilty of wire fraud, securities fraud, and conspiracy to commit wire and securities fraud. This parallel civil proceeding, brought by the Securities and Exchange Commission (the "Commission") one day after Mr. Durham was indicted, was stayed for the duration of the criminal action and was administratively closed without prejudice during Mr. Durham's appeal of his criminal convictions. Mr. Durham has since exhausted his criminal appellate rights, and the Court reopened this civil securities fraud action on June 8, 2016. Presently before the Court is a Motion for Summary Judgment filed by the Commission.[2]

---

[1] While Mr. Durham now represents himself, he was previously licensed as both an attorney and Certified Public Accountant.

[2] In addition to Mr. Durham, the Commission's Motion for Summary Judgment also relates to *pro se* Defendant James Cochran. However, Mr. Cochran subsequently advised this Court that he is

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

---

attempting to settle this matter with the Commission. [Filing No. 79.] The Court prefers agreed resolutions whenever possible, and the finality they bring. As such, the Magistrate Judge assigned to this case has been asked to convene a conference to attempt to resolve the claims against Mr. Cochran and this Order only relates to the Commission's claims against Mr. Durham.

2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

Mr. Durham declined to highlight any genuine issues of material fact or submit any evidence in support of his opposition to summary judgment. He admits that there are sufficient uncontested facts found by the jury in his criminal trial to support the violations alleged by the Commission in this matter, but he argues about the preclusive effect of the facts. [Filing No. 78 at 2-3.] Before considering the merits of Mr. Durham's arguments, the Court will first set forth the relevant background.

In 2002, Mr. Durham purchased Fair Finance Company ("Fair Finance") through his holding company Fair Holdings, Inc.. [Filing No. 68-7.] Up until that time, Fair Finance had operated largely by purchasing consumer finance receivables and selling investors variable rate investment certificates. [Filing No. 68-1 at 12-13; Filing No. 68-1 at 98-100.] Following the purchase, Mr. Durham became Fair Finance's President and Chief Executive Officer. [Filing No. 68-1 at 95-96.]

What occurred next was succinctly summarized by the Seventh Circuit as follows: Mr. Durham and his business partners quickly turned Fair Finance "into their personal piggy bank." *United States v. Durham*, 766 F.3d 672, 675 (7th Cir. 2014).

> They used money invested in Fair to support their lavish lifestyles and to fund loans to related parties that would never be repaid. When the company's auditors raised red flags about its financial status, the auditors were fired. When Fair experienced cash-flow problems, it misled investors and regulators so it could keep raising capital.
>
> Eventually the scheme began to unravel. One of the company's directors, himself under investigation in a separate matter, alerted the FBI that Fair was being operated as a Ponzi scheme. After an investigation, the FBI seized Fair's computer servers and arrested Durham, Cochran, and Snow. A jury convicted them on various counts of conspiracy, securities fraud, and wire fraud.

*Id*. at 675 - 76.

On March 16, 2011, the day after he was indicted in the criminal matter, the Commission filed suit alleging that Mr. Durham committed civil violations of the Securities and Exchange Acts of 1933 and 1934 (collectively, the "Securities Acts"), in particular, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 thereunder. [Filing No. 1 at 26-27.] The Commission requested that the Court: (1) issue an injunction permanently restraining and enjoining Mr. Durham from violating Sections 17(a) and 10(b) and Rule 10b-5; (2) order Mr. Durham to disgorge all ill-gotten gains

derived from his unlawful activities with prejudgment interest; (3) order Mr. Durham to pay civil penalties pursuant to the Securities Acts; and (4) prohibit Mr. Durham from acting as an officer or director pursuant to the Securities Acts. [Filing No. 1 at 28.]

Due to the parallel nature of the proceedings, the civil case was stayed, [Filing No. 18], and then administratively closed, [Filing No. 37], throughout the lengthy criminal appeal. On June 8, 2016, the Court ordered the civil case reopened. [Filing No. 39.] The Commission then filed a Motion for Summary Judgment, [Filing No. 68], which is now ripe for the Court's review.

### III.
### DISCUSSION

The crux of the Commission's argument in support of its Motion for Summary Judgment is straightforward – that the jury's verdict in the criminal trial against Mr. Durham should be given preclusive collateral effect to establish that Mr. Durham violated the Securities Acts, and the rules promulgated thereunder. [Filing No. 69 at 26-27.] The Commission argues that "[a]ll of the necessary elements to establish collateral estoppel are present here." [Filing No. 69 at 28.] With regard to Section 10(b) and Rule 10b-5, the Commission argues that the instructions under which the jury in the criminal case found Mr. Durham guilty track the language of Rule 10b-5. [Filing No. 69 at 29.] "Accordingly, when the jury found [Mr. Durham] guilty, they necessarily found the existence of all the elements that make up a civil Section 10(b) claim." [Filing No. 69 at 30.] With regard to Section 17(a), the Commission argues that the elements thereof are substantially similar to Section 10(b), with the addition that the former prohibits fraud in "connection with the offer or sale of securities" and "under the facts here there is no doubt that the jury necessarily concluded this element was present too." [Filing No. 69 at 30.]

5

In response, Mr. Durham concedes that there are sufficient "uncontested 'facts' found by the jury sufficient to support the violations of" Section 10(b) and Section 17(a). [Filing No. 78 at 2.] This Court agrees.

It bears note that Fair Finance and the Securities Acts under which Mr. Durham is now charged all have their origins in the same volatile moment in American history – the Great Depression. As Donald Fair testified at Mr. Durham's criminal trial, Fair Finance began in the 1930s when Donald's father began financing used dump trucks to sell "to workers who wanted to get a job on a Government project known as the WPA [Works Progress Administration], which was a very active part of Franklin Roosevelt's recovery program in the early '30s." [Filing No. 68-1 at 29.] At nearly the same time that the elder Mr. Fair was launching his nascent company, President Roosevelt was urging Congress to regulate the offering and sale of securities to "bring back public confidence" by putting "the burden of telling the whole truth on the seller," thereby adding "to the ancient rule of caveat emptor, the further doctrine 'let the seller also beware.'" President's Message to Congress, H.R. 85, 73rd Cong. (1st Sess. 1933). Thus were born the Securities Act of 1933, which largely concerns initial public offerings, and, one year later, the Securities Exchange Act of 1934, which regulates securities transactions. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976). Many years later, the Supreme Court reiterated the importance of regulating securities, stating, "[i]t requires but little appreciation of what happened in this country during the 1920's and 1930's to realize how essential it is that the highest ethical standards prevail in every facet of the securities industry." *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186-87 (1963).

To that end Section 10(b) of the Securities Exchange Act of 1934 is a "well-known statutory provision" that "forbids the 'use' or 'employ[ment]' of 'any manipulative or deceptive

6

device or contrivance' 'in connection with the purchase or sale of any security.'" *Chadbourne & Parke LLP v. Troice*, __ U.S. __, 134 S. Ct. 1058, 1063 (2014) (quoting 15 U.S.C. § 78j(b)). Similarly, "Securities and Exchange Commission Rule 10b-5 . . . forbids the use of any 'device, scheme, or artifice to defraud' (including the making of 'any untrue statement of a material fact' or any similar 'omi[ssion]') 'in connection with the purchase or sale of any security.'" *Id.* (quoting 17 C.F.R. § 240.10b-5). Section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), outlaws similar behavior, with the primary distinction being that "§ 10(b) and Rule 10b-5 appl[y] to acts committed in connection with a purchase or sale of securities while § 17(a) applies to acts committed in connection with an offer or sale of securities." *SEC v. Bauer*, 723 F.3d 758, 768 (7th Cir. 2013) (quoting *SEC v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995)).

The elements of Section 10(b), Rule 10b-5, and Section 17(a) are, indeed, nearly identical to the jury instructions given for Count XII in Mr. Durham's criminal trial.[3] Pursuant to those

---

[3] The final instructions given to the jury in Mr. Durham's criminal trial for Count XII (Securities Fraud) are as follows:

> In order for you to find a defendant guilty of this charge, the government must prove each of the following beyond a reasonable doubt:
>
> 1. In connection with the purchase or sale of securities, the defendant did any one or more of the following as described in the Superseding Indictment:
> (a) employed a device, scheme, or artifice to defraud;
> (b) made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> (c) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser.
>
> 2. The defendant acted willfully, knowingly, and with the intent to defraud; and
>
> 3. The defendant knowingly used, or caused to be used, any means or instrument of communication in interstate commerce in furtherance of the fraudulent conduct.

7

instructions, the jury found Mr. Durham criminally guilty of securities fraud, thus finding that the government had proved each element of that crime beyond a reasonable doubt.[4] [Cause No. 1:11-cr-00042, Filing No. 354 at 13.] The question presently before this Court is whether, under the doctrine of collateral estoppel, the jury verdict is sufficient to conclusively establish that Mr. Durham also committed civil violations of Section 10(b), Rule 10b-5, and Section 17(a).

The doctrine of collateral estoppel (also known as issue preclusion), holds that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 782 (7th Cir. 2017) (internal citations omitted). Issue preclusion is appropriate when the following four elements are met:

> (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citing *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.,* 649 F.3d 539, 547 (7th Cir. 2011)); *see also Grede v. FCStone,*

---

> If you find from your consideration of all the evidence that [the] government has proved each of these propositions beyond a reasonable doubt as to any defendant, then you should find that defendant guilty of that charge.

[Cause No. 1:11-cr-00042, Filing No. 353 at 36.]

[4] The jury's verdict on Count XXII was subsequently confirmed on appeal by the Seventh Circuit. *Durham,* 766 F.3d 672. However, as set forth herein in Part III.A, *infra*, this is not an essential element of collateral estoppel.

*LLC*, __ F.3d __, 2017 WL 3470145, at *6 (7th Cir. Aug. 14, 2017).[5] Collateral estoppel "may be applied in civil trials to issues previously determined in a criminal conviction." *Appley v. West*, 832 F.2d 1021, 1025-26 (7th Cir. 1987). "The estoppel, however, extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Williams v. Liberty*, 461 F.2d 325, 327 (7th Cir. 1972) (quoting *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568-69 (1950)). In the case of a criminal conviction based on a verdict of guilty, "issues

---

[5] The Court notes that the Commission cites a slightly different version of the rule for collateral estoppel than that set forth in *Adams*, 742 F.3d at 736. [Filing No. 69 at 28 (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)).] In *Scherer*, the Seventh Circuit stated that collateral estoppel precludes relitigation of issues when "(1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Scherer*, 840 F.2d at 442. The test set forth in *Sherer* is similar to the test contained in *Adams*. However, the latter contains the edict that the party against whom estoppel is invoked must have been "fully represented" in the prior action. *Id.*

The first time the "fully represented" language appears in the test for collateral estoppel in this or any other circuit was in 1986, when the U.S. District Court for the Northern District of Illinois included it in *Klingman v. Levinson*, 66 B.R. 548, 552 (N.D. Ill. 1986). On appeal, the Seventh Circuit repeated the *Klingman* test, including the "fully represented" language. Curiously, none of the cases cited by *Klingman* for this proposition, either by the District Court or the Seventh Circuit, include the "fully represented" language. *See Klingman*, 831 F.2d at 1295 (citing *Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 n. 3 (7th Cir.1987); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 392 (7th Cir. 1986); *Ferrell v. Pierce,* 785 F.2d 1372, 1384-85 (7th Cir. 1986)); *Klingman*, 66 B.R. at 552 (citing *Ray v. Indiana & Michigan Elec. Co.,* 758 F.2d 1148, 1150 (7th Cir. 1985)).

Since 1986, the rule set forth in *Klingman* has been cited within the Seventh Circuit nearly 200 times, becoming the prevailing test for collateral estoppel within this circuit. However, none of the cases containing the "fully represented" language involve claims of ineffective assistance of counsel from the party against whom estoppel is invoked.

Here, Mr. Durham does not set forth any arguments concerning ineffective assistance of counsel as it specifically relates to the "fully represented" language set forth in the Seventh Circuit's test for collateral estoppel. As such, any arguments to that effect are waived. *See Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) (quoting *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("It is a well-established rule that arguments not raised to the district court are waived on appeal.")).

9

which were essential to the verdict must be regarded as having been determined by the judgment."
*Id.*

Here, as Mr. Durham acknowledges, the uncontested facts found by the jury support a finding that he committed civil violations of Section 10(b), Rule 10b-5, and Section 17(a). Elements at the very heart of the Securities Acts were distinctly and directly before the jury. As such, this Court concludes that the issue of whether Mr. Durham violated Section 10(b), Rule 10b-5, and Section 17(a) of the Acts was fully litigated in Mr. Durham's criminal case and therefore cannot be relitigated by him under the doctrine of collateral estoppel. However, Mr. Durham makes two arguments in opposition to summary judgment, each of which the Court will consider in turn.

### A. Issue Preclusion and a § 2255 Motion

First, Mr. Durham contends that the Commission may not use the results of his criminal conviction for collateral estoppel purposes because he "has not been afforded a full and fair opportunity to litigate the issues in the criminal proceedings" due to ineffective assistance of counsel at his criminal trial. [Filing No. 78 at 3-4.] Mr. Durham argues that because he has not yet filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (a "§ 2255 Motion"), his claims have not been fully and fairly adjudicated and he "should not be precluded from litigating these issues anew in this matter." [Filing No. 78 at 7-8.]

In response, the Commission argues that allowing Mr. Durham to avoid the preclusive effect of his criminal conviction until his anticipated ineffective assistance of counsel claim is finalized "would halt the process of justice." [Filing No. 80 at 8.] In addition, the Commission

cites several cases indicating claim preclusion is not barred when there is a pending appeal, let alone a pending § 2255 Motion. [Filing No. 80 at 8.]

In support of their arguments, both parties cite various iterations of *SEC v. Black*, a civil enforcement action brought by the Securities and Exchange Commission in 2004, in which the U.S. District Court for the Northern District of Illinois issued final judgment in 2012. *See generally S.E.C. v. Black*, 2005 WL 1498893 (N.D. Ill. June 17, 2005); 2008 WL 4394891 (N.D. Ill. Sept.24, 2008); 2009 WL 1181480 (N.D. Ill. April 30, 2009); 2012 WL 601858 (N.D. Ill. Feb.21, 2012); 2012 WL 4856196 (N.D. Ill. Oct. 9, 2012); 2012 WL 5429908 (N.D. Ill. Nov. 6, 2012). The civil case against Black, like the one against Mr. Durham, involved a parallel criminal proceeding, its subsequent appeal, and a related § 2255 Motion. In 2008, after the Seventh Circuit affirmed several counts of Black's criminal conviction, the District Court noted that "the collateral estoppel effect of the criminal judgment is not affected" by any potential appeal to the Supreme Court. *Black*, 2008 WL 4394891, at *1, n.1. Four years later, after the District Court entered final judgment against Black in the civil case, he moved for a stay of execution pending resolution of a §2255 Motion. *Black*, 2012 WL 5429908, at *1. The District Court rejected Black's argument, holding that Black had not met his burden of establishing that he was entitled to a stay. *Id*. at *2.

Mr. Durham highlights the latter ruling in his opposition to summary judgment, pointing out that *Black* involved a post-judgment motion, while his case does not. [Filing No. 78 at 5.] However, the District Court's denial of the stay in *Black* was premised not on the fact that the case involved a post-judgment motion, but on the fact that Black's justification for a stay did not merit the Court invoking its inherent authority to stay proceedings, including execution of judgments. *Black*, 2012 WL 5429908, at *2. Moreover, *Black* merely serves to highlight that a pending § 2255 Motion is not a bar to rendering or executing final judgment. Mr. Durham fails to cite, and

11

this Court is unaware of, any contrary cases holding that a pending § 2255 Motion provides this Court with grounds to abstain from applying issue preclusion.

Instead, the portion of *Black* that is instructive in this case provides that "the collateral estoppel effect of the criminal judgment is not affected" by any potential appeal. *Black*, 2008 WL 4394891, at *1, n.1 (citing *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) ("the fact that an appeal was lodged does not defeat the finality of the judgment")); *see also Deposit Bank of Frankfort v. Bd. of Councilmen of City of Frankfort*, 191 U.S. 499, 511 (1903) ("We are unable to find reason or authority supporting the proposition that because a judgment may have been given for wrong reasons or has been subsequently reversed, that it is any the less effective as an estoppel between the parties while in force."). If a direct appeal is no bar to collateral estoppel, it logically follows that a § 2255 Motion is also not a bar to collateral estoppel.

As such, Mr. Durham's arguments concerning his § 2255 Motion are unavailing. Issue preclusion applies to his criminal convictions and he is collaterally estopped from relitigating the elements of said convictions.

**B.**     **Disgorgement**

In addition to his arguments regarding preclusion generally, Mr. Durham argues that the Commission cannot use issue preclusion to establish an amount for the purposes of disgorgement because neither the court nor the jury made any determination as to how much profit he received and, in any case, there can be no preclusive effect to findings at the sentencing stage of a criminal trial. [Filing No. 78 at 8-13.]

In response, the Commission argues that disgorgement "need only be a reasonable approximation of profits." [Filing No. 80 at 9.] In addition, the Commission contends that "more

than enough evidence was presented at trial" to establish the ill-gotten gains that Mr. Durham obtained. [Filing No. 80 at 9.]

Disgorgement is a form of "[r]estitution measured by the defendant's wrongful gain." *Kokesh v. SEC*, __ U.S. __, 137 S. Ct. 1635, 1640 (2017) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment *a,* p. 204 (2010)). When the Commission seeks disgorgement, "it acts in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties." *Id*. at 1643. In cases where restitution has already been ordered, courts generally hold that "the civil disgorgement amount should be reduced by the amount already paid in restitution." *S.E.C. v. McCaskey*, 2002 WL 850001, at *14 (S.D.N.Y. Mar. 26, 2002) (citing *S.E.C. v. Palmisano*, 135 F.3d 860, 863–64 (2d Cir. 1998) (ordering that to the extent an individual "pays or has paid restitution as ordered in the criminal judgment, such payments will offset his disgorgement obligation" under a civil judgment)).

Although there is little doubt that Mr. Durham was the beneficiary of significant ill-gotten gains during the duration of his association with Fair Finance, the amount of his wrongful gains have not been adequately established either by the jury's verdict or by the Commission in its Motion for Summary Judgment. The Commission urges this Court to order Mr. Durham to pay disgorgement in excess of $230 million. [Filing No. 69 at 34 ("Defendants should be ordered to pay disgorgement in the amount of $208,830,082.27 together with prejudgment interest of $22,647,954.29 for a total obligation of $231,478,036.56")]. This figure is identical to the restitution amount that Mr. Durham and his co-defendants in the criminal trial were ordered to pay. [Cause No. 1:11-cr-00042, Filing No. 456.] However, the amount of criminal restitution is not a measure of a criminal's wrongful gain but, rather, a measurement of a victim's loss. *United States v. Navarrete*, 667 F.3d 886, 888-89 (7th Cir. 2012) (explaining that criminal restitution "can

be based only on the victim's loss"). As such, the amount of criminal restitution Mr. Durham was ordered to make does not allow the Court to determine an appropriate amount of disgorgement.

Other numbers provided by the Commission also do not allow the Court to reasonably estimate Mr. Durham's ill-gotten gains as a matter of law. For example, the Commission highlights the amount of claims that were filed by creditors in Fair Finance's bankruptcy, which exceeded $215 million. [Filing No. 80 at 9.] However, proof of claim totals again merely show the loss that Fair Finance's creditors incurred, rather than any wrongful gains obtained by Mr. Durham. In addition, the Commission states that the amount of related party loans made with investor money exceeded $200 million. [Filing No. 80 at 10.] Although it is possible that Mr. Durham obtained wrongful gains as a result of these transactions, the amount of the related party loans does not, in and of itself, establish this fact. This is particularly true at the summary judgment stage, where this Court must view the record in the light most favorable to Mr. Durham.

In addition, evidence was presented at trial, that to some very limited extent, Mr. Durham invested proceeds from Fair into legitimate business. While some had failed, others remained viable and were assigned to the bankruptcy Trustee. Based on the evidence of which it is aware, the Court cannot conclude that all Fair investor proceeds constitute ill-gotten gains as a matter of law. The Commission's presentation makes no attempt to account for this evidence.

As a final matter, as the Commission concedes, the Commission's requested disgorgement amount is likely inconsistent with the statute of limitations for securities fraud disgorgement recently recognized by the Supreme Court in *Kokesh* __ U.S. __, 137 S. Ct. 1635. [Filing No. 80 at 10 n.8.]

Based on the record before this Court, the Commission has failed to adequately establish a disgorgement amount. As such, the Court need not reach Mr. Durham's argument regarding whether the Court should give preclusive effect to sentencing findings.

The Commission's Motion for Summary Judgment is **DENIED** as to Part II of its requested relief, relating to disgorgement. [Filing No. 69 at 27-28.]

### C. Injunctive Relief and Financial Remedies

The Court, having conclusively established that Mr. Durham violated the Securities Acts, has jurisdiction to permanently enjoin Mr. Durham from future violations of the Securities Acts and from acting as an officer or director pursuant to 15 U.S.C. § 77t(b), 15 U.S.C. § 77t(e), and 15 U.S.C. § 78u(d). The Commission's Motion for Summary Judgment is therefore **GRANTED** as it relates to Parts I and IV of its requested relief. [Filing No. 69 at 25-30.]

In addition, the Court has jurisdiction to impose civil penalties against Mr. Durham pursuant to 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3). "District courts have considerable discretion when setting the amount of a civil penalty." *S.E.C. v. Cook*, 2015 WL 5022152, at *29 (S.D. Ind. Aug. 24, 2015).

Here, the Commission seeks penalties under the third and highest available tier because Mr. Durham's violations "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii). The Commission states that pursuant to the regulations in effect during the time period at issue, this Court may impose a civil penalty of $130,000 per violation, or a penalty in the amount of Mr. Durham's gross pecuniary gain. 17 C.F.R. § 201.1001.

As previously explained in Part III.B of this Order, the Commission failed to provide sufficient evidence to allow the Court to make a determination as to Mr. Durham's gross pecuniary gain. However, the Commission has conclusively established that Mr. Durham violated the Securities Acts such that third tier penalties under 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii) are appropriate.

In deciding what the penalties should be, "the court should consider the seriousness of the violations, the defendant's intent, whether the violations were isolated or recurring, whether the defendant has admitted wrongdoing, the losses or risks of losses caused by the conduct, and any cooperation the defendant provided to enforcement authorities." *S.E.C. v. Church Extension of Church of God, Inc.*, 429 F. Supp. 2d 1045, 1050 (S.D. Ind. 2005).

In this instance, the Court need not belabor a penalty analysis as it relates to Mr. Durham's remorse (or lack thereof), nor the seriousness of his violations or the immense losses caused by his conduct. The Court discussed such factors extensively in sentencing Mr. Durham in 2012, noting his lack of "sincere remorse," the "long-standing nature" of his scheme, and the seriousness of the losses caused by his conduct. [Filing No. 69-80.] The Court stated that the fraud perpetrated by Mr. Durham was a "most serious offense, because it undermines the fabric of this country. And it is utterly disrespectful [to] the law." [Filing No. 69-80 at 130-131.] Nothing that has occurred in the intervening five years has altered the Court's analysis of this matter. Put simply, the factors this Court must consider in assessing a civil penalty do not weigh in Mr. Durham's favor, and he has presented no arguments in his opposition to summary judgment to mitigate these factors.

As such, the Court concludes that Mr. Durham should pay a civil penalty in the amount of $130,000 per violation consistent with 17 C.F.R. § 201.1001. However, this still leaves open a determination of how many violations Mr. Durham committed. The Court is cognizant of both

16

the long-standing nature of Mr. Durham's fraudulent scheme, and of *Gabelli v. SEC*, 568 U.S. 442 (2013), in which the Supreme Court held that a 5-year statute of limitations applies to civil penalties imposed pursuant to the Securities Acts. *See also S.E.C. v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013) (noting that profits derived earlier than five years before the Commission instituted its suit against the defendants may not be included as part of the civil penalty under *Gabelli*).

The jury in the criminal trial found Mr. Durham guilty of twelve counts of wire fraud, securities fraud, and conspiracy to commit wire and securities fraud in violation of the Securities Acts. [Cause No. 1:11-cr-00042, Filing No. 353.] Ten of these convictions were upheld on appeal. *Durham*, 766 F.3d at 672. The time period at issue for each conviction, set forth in the Superseding Indictments upon which the jury based its verdicts, indicates that each violation falls within the statute of limitations set forth in *Gabelli*. [Cause No. 1:11-cr-00042, Filing No. 217 at 11-21.] Although it would be within the Court's discretion to impose penalties by looking behind each conviction for separate violations, see, e.g., *Pentagon Capital Mgmt.*, 725 F.3d at 288 n.7 (finding no error in the district court's methodology of counting each late trade as a separate violation); *Church of God*, 429 F. Supp. 2d at 1051 (noting that the evidence was sufficient to support a finding of at least one violation for each Offering Circular), the Court exercises its considerable discretion in setting the amount of the civil penalty against Mr. Durham at $130,000 for each of his separate convictions, amounting to a total penalty of $1,300,000. Therefore, the Commission's Motion for Summary Judgment is **GRANTED** as it relates to Part III of its requested relief, [Filing No. 69 at 28-39], and the Court **ORDERS** Mr. Durham to pay civil penalties in the amount of **$1,300,000**.

## IV.
### CONCLUSION

For the reasons set forth herein, the Commission's Motion for Summary Judgment, [Filing No. 68], is **GRANTED in part** and **DENIED in part**.

The Commission's Motion is **GRANTED** as it relates to Parts I, III, and IV of the Commission's requested relief as follows:

- Mr. Durham is permanently **ENJOINED** from future violations of the Securities Acts pursuant to Part I;

- Mr. Durham is **ORDERED** to pay a civil penalty in the amount of **$1,300,000** pursuant to Part III; and

- Mr. Durham is permanently **ENJOINED** from acting as an officer or director pursuant to Parts IV.

The Commission's Motion is **DENIED** as it relates to Part II of the Commission's requested relief for disgorgement. The Court requests that the Magistrate Judge convene a status conference with the parties at his earliest convenience in order to establish a plan to bring this case to a conclusion on the issue of disgorgement.

Date: 8/18/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

TIMOTHY S. DURHAM
60452-112
MCCREARY - USP
MCCREARY U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 3000
Pine Knot, KY  42635

JAMES F. COCHRAN
#09970-028
LEXINGTON - FMC
LEXINGTON FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 14500
LEXINGTON, KY 40512

RICK D. SNOW
Reg. #09969-028
FCI PEKIN
Federal Correctional Institution
P O Box 5000
Pekin, IL 61555

Jennifer Chun Barry
U.S. SECURITIES AND EXCHANGE COMMISSION (Philadelphia)
barryj@sec.gov

Scott Alexander Thompson
U.S. SECURITIES AND EXCHANGE COMMISSION
thompsons@sec.gov