UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| vs. | ) ) ) | No. 1:11-cv-00370-JMS-TAB |
| TIMOTHY S. DURHAM, JAMES F. COCHRAN, | ) ) ) | |
| *Defendants*. | ) ) | |
| _____ | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| *Intervenor*. | ) | |

**ORDER**

Nearly seven years ago, a jury found Defendant James Cochran guilty of wire fraud, securities fraud, and conspiracy to commit wire and securities fraud. Mr. Cochran has since exhausted his criminal appellate rights, and the Court reopened this parallel civil proceeding brought by the Securities and Exchange Commission (the "Commission") in 2016.[1]

On November 1, 2018, the Commission filed a Motion for Summary Judgment, [Filing No. 131], to which Mr. Cochran did not respond. That Motion is now ripe for the Court's review.

---

[1] In addition to Mr. Cochran, the Commission brought this civil proceeding against *pro se* Defendant Tim Durham. Although Mr. Durham remains a Defendant in this matter, the Court has ruled on the civil claims brought against Mr. Durham in separate orders. [Filing No. 86; Filing No. 118.] As such, this Order only pertains to Mr. Cochran.

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d

892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

As set forth by the Seventh Circuit Court of Appeals in its decision affirming Mr. Cochran's criminal conviction, this case involves Mr. Cochran's dealings with Fair Finance Company ("Fair"). *United States v. Durham*, 766 F.3d 672, 675-76 (7th Cir. 2014). As the Seventh Circuit explained, "Timothy Durham and James Cochran bought the business in 2001 through a holding company formed for that purpose and named Fair Holdings, Inc. Durham was its CEO, Cochran was its COO and chairman of the board." *Id.* at 676.

> They used money invested in Fair to support their lavish lifestyles and to fund loans to related parties that would never be repaid. When the company's auditors raised red flags about its financial status, the auditors were fired. When Fair experienced cash-flow problems, it misled investors and regulators so it could keep raising capital.

Eventually the scheme began to unravel. One of the company's directors, himself under investigation in a separate matter, alerted the FBI that Fair was being operated as a Ponzi scheme. After an investigation, the FBI seized Fair's computer servers and arrested Durham, Cochran, and Snow.

*Id*. at 676.

On June 20, 2012, a jury found Mr. Cochran guilty of conspiracy to commit wire fraud and securities fraud, securities fraud, and six counts of wire fraud. *See* Jury Verdict, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. June 22, 2012), ECF No. 354. Thereafter, Mr. Cochran was sentenced to 25 years of imprisonment and the Court imposed criminal restitution in the amount of $202,830,082.27. *See* Entry for November 30, 2012, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. December 5, 2012), ECF No. 444. Upon entry of judgment, the Court directed that restitution be paid to payees listed on a 115-page spreadsheet that was attached to the judgment. *See* List of Payees, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. December 10, 2012), ECF No. 450-1. On September 4, 2014, the Seventh Circuit Court of Appeals affirmed Mr. Cochran's conviction, and denied rehearing on March 10, 2015. *See* Mandate of the USCA, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. March 18, 2015), ECF No. 537.

Throughout the pendency of the criminal case, including the appeal, this parallel civil action, which was filed on March 16, 2011, was stayed. On June 8, 2016, the Court ordered the civil case reopened. [Filing No. 39.] The substance of this action involves allegations that Mr. Cochran committed civil violations of the Securities and Exchange Acts of 1933 and 1934 (collectively, the "Securities Acts"), in particular, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 thereunder. [Filing No. 1 at 26-27.] The Commission requested that the Court: (1) issue an injunction permanently restraining and enjoining Mr. Cochran from violating Sections 17(a) and 10(b) and Rule 10b-5; (2) order Mr. Cochran to disgorge all ill-gotten gains derived from his

unlawful activities with prejudgment interest; (3) order Mr. Cochran to pay civil penalties pursuant to the Securities Acts; and (4) prohibit Mr. Cochran from acting as an officer or director pursuant to the Securities Acts. [Filing No. 1 at 28-29.]

On January 26, 2017, the Commission moved for summary judgment on its claims against Mr. Cochran and Mr. Durham. [Filing No. 68.] On July 13, 2017, in lieu of a response to the Commission's Motion for Summary Judgment, Mr. Cochran informed the Court that he "desired" to settle the matter with the Commission. [Filing No. 79.] On August 18, 2017, the Court ruled on the Commission's Motion for Summary Judgment, but only as it related to the Commission's claims against Mr. Durham. [Filing No. 86.] With regard to Mr. Cochran, the Court stated that "the Magistrate Judge assigned to this case has been asked to convene a conference to attempt to resolve the claims against Mr. Cochran" and that the Court's Order "only relates to the Commission's claims against Mr. Durham." [Filing No. 86 at n.2.]

On December 14, 2017, the Commission advised that it had not yet reached a settlement agreement with Mr. Cochran. [Filing No. 97.] Five days later, Mr. Cochran filed a document with the Court in which he argued that the Commission had relied upon inadmissible hearsay in pursuing its claims against him and that, in attempting to settle the matter, the Commission was "trying to get one over on" him. [Filing No. 99 at 4.] Following additional settlement efforts before the Magistrate Judge, on February 26, 2018, Mr. Cochran filed a document with the Court in which he questioned the $183 million disgorgement amount sought by the Commission in its previous Motion for Summary Judgment and proposed a new disgorgement amount of approximately $24.5 million. [Filing No. 108.]

On April 13, 2018, the Commission filed a Motion to Determine Disgorgement with regard to Mr. Durham, in which it advised the Court that it expected an imminent settlement with Mr.

Cochran. [Filing No. 111 at 2 n.1.] Despite the fact that this Motion did not pertain to him, Mr. Cochran filed a response to the Commission's Motion, in which he again proposed a disgorgement amount of $24.5 million. [Filing No. 113 at 5.] On June 29, 2018, the Court ruled on the Commission's Motion as it related to Mr. Durham, and specifically stated that the Order did not apply to Mr. Cochran. [Filing No. 118 at 1 n.2.] Days later, the Court noted that Mr. Cochran and the Commission were still in settlement negotiations, and denied Mr. Cochran's motion concerning disgorgement as premature, but without prejudice should settlement not be achieved. [Filing No. 119 at 1.]

What followed were numerous updates from the Commission regarding the status of settlement efforts with Mr. Cochran. On August 9, 2018, the Commission advised the Court that it "anticipates an agreement with Cochran on disgorgement within two weeks." [Filing No. 120 at 1.] On August 23, 2018, the Commission advised that it "anticipates an agreement with Cochran but recognizes that receipt, execution, and return of the consent has proven challenging in the past due to his incarceration." [Filing No. 124 at 1-2.] On September 28, 2018, however, the Commission advised that "[u]nfortunately, the parties are unable to agree on disgorgement, and therefore the Commission is asking that the Court proceed with ruling on its summary judgment motion." [Filing No. 126 at 1.] The Court then ordered the Commission to file one consolidated motion as to Mr. Cochran's liability and disgorgement. [Filing No. 127.] On October 15, 2018, Mr. Cochran filed a document with this Court in which he stated that he requested that the Commission provide him with a breakdown of its proposed settlement amount but that he had not received one. [Filing No. 128.]

On November 1, 2018, the Commission filed a Motion for Summary Judgment against Mr. Cochran. [Filing No. 131.] The Commission notified Mr. Cochran of his right to file a response

to its Motion, [Filing No. 134], however, Mr. Cochran did not file any response.  As such, the Commission's Motion for Summary Judgment is now ripe for the Court's review.

### III.
#### DISCUSSION

#### A.  Violation of Securities Laws

In its Motion, the Commission first argues that the jury's verdict in the criminal trial should be given collateral effect in this matter to establish the Commission's claims against Mr. Cochran. With regard to the Commission's claim based on Section 10(b), 15 U.S.C. § 78j(b), the Commission argues that "when the jury found Defendant guilty, they necessarily found the existence of all the elements that make up a civil Section 10(b) claim," including the scienter requirement.  [Filing No. 132 at 31.]  With regard to Section 17(a), the Commission argues that the elements thereof are substantially similar to Section 10(b), with the addition that the former prohibits fraud in "connection with the offer or sale of securities" and "under the facts here there is no doubt that the jury necessarily concluded this element was present too." [Filing No. 132 at 31-32.]  In further support of its arguments, the Commission points to this Court's order regarding the same civil allegations against Mr. Durham in which this Court held that Mr. Durham was collaterally estopped from litigating violations of Section 10(b), Rule 10b-5, and Section 17(a). [Filing No. 132 at 32.]

Mr. Cochran did not file any response to the Commission's Motion, nor do any of the various documents Mr. Cochran filed in this Court over the past year address the issue of whether he committed civil violations of Section 10(b), Rule 10b-5, and Section 17(a). [*See* Filing No. 113 (Mr. Cochran's "Motion of . . . Willingness to Negotiate with the SEC and Discern the Correct Disgorgement"); Filing No. 128 (Mr. Cochran's "Motion Report as to Status of Settlement Negotiations with Securities and Exchange Commission").]

The question presently before this Court is whether, under the doctrine of collateral estoppel, the jury verdict is sufficient to conclusively establish that Mr. Cochran also committed civil violations of Section 10(b), Rule 10b-5, and Section 17(a).[2]

The doctrine of collateral estoppel (also known as issue preclusion), holds that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that

---

[2] Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C.A. § 78j.

Similarly, Rule 10b–5 provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud, [or] . . .

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (2013).

Lastly, in pertinent part, Section 17(a) provides:

It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 782 (7th Cir. 2017) (internal citations omitted). "A party is constrained by collateral estoppel as a matter of federal law only where four criteria are satisfied: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must [have been] fully represented in the prior action." *Grede v. FCStone, LLC*, 867 F.3d 767, 776 (7th Cir. 2017) (citations omitted). Under collateral estoppel, an "outstanding criminal judgment or disciplinary sanction, as long as it stands, blocks any inconsistent civil judgment." *Haywood v. Hathaway*, 842 F.3d 1026, 1029 (7th Cir. 2016). "The estoppel, however, extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Williams v. Liberty*, 461 F.2d 325, 327 (7th Cir. 1972) (quoting *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568-69 (1950)).

On June 20, 2012, a jury found Mr. Cochran guilty of securities fraud, *see* Jury Verdict, 13, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. June 22, 2012), ECF No. 354, after having been instructed that the government must "prove each of the following beyond a reasonable doubt:"

> 1. In connection with the purchase or sale of securities, the defendant did any one or more of the following as described in the Superseding Indictment:
>    (a) employed a device, scheme, or artifice to defraud;
>    (b) made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>    (c) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser.
> 2. The defendant acted willfully, knowingly, and with the intent to defraud; and
> 3. The defendant knowingly used, or caused to be used, any means or instrument of communication in interstate commerce in furtherance of the fraudulent conduct[.]

*See* Final Jury Instructions, 36, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. June 22, 2012), ECF No. 353.

The "primary distinction" between the laws at issue in this case "is that § 10(b) and Rule 10b–5 appl[y] to acts committed in connection with a *purchase or sale* of securities while § 17(a) applies to acts committed in connection with *an offer or sale* of securities." S.E.C. v. Bauer, 723 F.3d 758, 768 (7th Cir. 2013) (citations omitted; emphasis in original). As applied in this case, "the proscriptions contained in § 10(b), Rule 10b–5, and § 17(a) are substantially the same," *S.E.C. v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995), and, the uncontested facts found by the jury via the instruction set forth herein, support a finding that Mr. Cochran committed civil violations of Section 10(b), Rule 10b-5, and Section 17(a).

As such, the Commission's Motion for Summary Judgment on its claim that Mr. Cochran violated Section 10(b), Rule 10b-5, and Section 17(a) is **GRANTED**.

Based on this finding, the Commission argues that Mr. Cochran should be "permanently enjoined from future violations of Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act, ordered to disgorge his ill-gotten gains, ordered to pay civil money penalties to punish him for his conduct and deter future violations, and permanently barred from again serving as an officer or a director." [Filing No. 132 at 32-33.] The Court will consider each argument, in turn.

## B. Enjoined from Future Violations of Securities Laws

The Commission argues that the Court should permanently enjoin Mr. Cochran "from further violations of Sections 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act" because the harm he caused was "overwhelming and egregious," he acted with "a high degree of scienter," the scheme at issue "lasted several years," and Mr. Cochran

"has evinced no appreciation of the wrongful nature of his conduct or provided assurances against future violations." [Filing No. 132 at 33-35.]

Here again, Mr. Cochran did not respond to the Commission's arguments.

The Court, having conclusively determined that Mr. Durham violated the Securities Acts, has jurisdiction to permanently enjoin Mr. Durham from future violations of the Securities Acts and from acting as an officer or director pursuant to 15 U.S.C. § 77t(b), 15 U.S.C. § 77t(e), and 15 U.S.C. § 78u(d). Once the Commission has demonstrated a past violation, it "need only show that there is a reasonable likelihood of future violations in order to obtain [injunctive] relief." S.E.C. v. Yang, 795 F.3d 674, 681 (7th Cir. 2015) (quoting SEC v. Holschuh, 694 F.2d 130, 144 (7th Cir. 1982)). To predict such a likelihood, the court "must assess the totality of the circumstances surrounding the defendant and his violation," including consideration of "the gravity of harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations." Id. The Court finds that the Commission has set forth sufficient evidence to show that there is a reasonable likelihood of future violations. In particular, the document Mr. Cochran filed on May 3, 2018 is replete with statements showing that Mr. Cochran does not show recognition of his own culpability. [Filing No. 113.] Moreover, by failing to respond to the Commission's Motion, Mr. Cochran has given no assurances against future violations, let alone sincere assurances. In addition, the size and scope of the scheme for which Mr. Cochran was found guilty weighs in favor of enjoinment. As such, the Commission's Motion for Summary Judgment is **GRANTED** as to enjoinment and Mr. Cochran is permanently **ENJOINED** from future violations of the Securities Acts.

### C. Disgorgement of Ill-Gotten Gains

In support of its arguments for disgorgement, the Commission contends that Mr. Durham and Mr. Cochran "were the 100% owners of DC Investments," ("DCI"), and argues that the Court should consider Mr. Cochran's "direct cash payments from DCI" as his ill-gotten gains. [Filing No. 132 at 36-37.] Specifically, the Commission argues that Mr. Cochran "directly received approximately $2,507,410.03 from DCI" and then made "one payment of $157,500 to the bankruptcy trustee in relation to certain ongoing litigation," leaving a total of $2,349,910.03. [Filing No. 132 at 37.] In support of the amounts set forth in its brief, the Commission included the declaration of Daniel Koster, a Data Analytics Specialist employed by the Commission, who states that the amount that went from DCI to Mr. Cochran does not include his salary. [Filing No. 131-1 at 3.]

Mr. Cochran did not file a response to the Commission's Motion, but he did file two documents over the past year concerning disgorgement, which the Court will consider. First, in May 2018, in response to the Commission's argument that Mr. Durham owed $183 million, Mr. Cochran proposed a "new disgorgement figure of $24,500,000.00," based on his calculation of subtracting the money that was already "in" Fair when it was purchased from the amount that the Commission set forth as subordinated debt. [Filing No. 113 at 5.] Given that the amount the Commission now seeks is well below Mr. Cochran's then-proposed disgorgement amount, the Court will disregard his May 2018 arguments. Second, and more recently, Mr. Cochran filed a document in which he stated that he would settle this case if the Commission would provide a breakdown of the disgorgement amount it seeks. [Filing No. 128.] In this document, Mr. Cochran states that he had sent the "Trustee (of Fair Finance)" a check in the amount of $157,500.00. [Filing No. 128 at 1.] In support of its subsequent Motion, the Commission deducted the amount

of the check Mr. Cochran discusses from its proposed disgorgement amount. [Filing No. 132 at 37.] As such, the Court considers Mr. Cochran's arguments resolved as they relate to the payment to the Trustee. Mr. Cochran also questions whether the Commission's proposed amount includes his salary, [Filing No. 128 at 1], a contention that Mr. Koster addresses in his declaration by clarifying that the Commission's proposed amount does not include Mr. Cochran's salary payments, [Filing No. 131-1 at 3]. The only remaining argument Mr. Cochran proffers is that he is entitled to a breakdown of the proposed disgorgement amount. A precise breakdown has been provided by the Commission in a chart contained in its Motion and in Mr. Koster's sworn Declaration. As such, none of the arguments set forth by Mr. Cochran in his various filings over the past year have are addressed inn the amount the Commission now seeks in disgorgement.

In 2017, Justice Sotomayor, writing for a unanimous Court in *Kokesh v. SEC*, stated that SEC disgorgement "is a form of [r]estitution measured by the defendant's wrongful gain." *Kokesh v. SEC*, 137 S. Ct. 1635, 1640 (2017) (citations omitted). When the Commission seeks disgorgement, "it acts in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties." *Id*. at 1643 (citation omitted). The "primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains." *Id*. at 1643 (citation omitted).

In this case, the Court finds that the Commission has provided the Court with enough detail to support a reasonable approximation of ill-gotten gains. Mr. Koster's Declaration sets forth amounts that Mr. Cochran "directly received" from DCI and states that such amounts do "not include his salary" during the relevant time period. [Filing No. 131-1 at 2-3.] As such, the Court grants the Commission's requested disgorgement amount and the Court further agrees that the

Commission is entitled to prejudgment interest on the disgorgement amount at the rate set forth in 17 C.F.R. § 201.600.[3]

As such, based on the record before the Court, the Commission's Motion for Summary Judgment is therefore **GRANTED**, and Mr. Cochran is **ORDERED** to pay disgorgement in the amount of **$2,349,910.03**, plus prejudgment interest at the rate set forth in 17 C.F.R. § 201.600.

In addition, this finding forecloses the arguments set forth in Mr. Cochran's "Motion Report as to Status of Settlement Negotiations with Securities and Exchange Commission," [Filing No. 128], and therefore, Mr. Cochran's Motion is **DENIED AS MOOT**.

### D. Civil Penalties

The Court also has jurisdiction to impose civil penalties against Mr. Conhran pursuant to 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3). Here, the Commission appears to seek penalties under the third and highest available tier because Mr. Cochran "(1) had a high degree of scienter; (2) reaped substantial illegal profits as a direct result of their fraudulent scheme; and (3) engaged in repetitive illegal conduct." [Filing No. 132 at 39.] Notably, however, the Commission does not make any explicit argument as to the total amount of civil penalties it argues should be imposed, but merely sets forth the amount of penalties the Court previously imposed upon Mr. Durham and argues that Mr. Cochran's "conduct is equally deserving of a civil penalty." [Filing No. 132 at 40.]

---

[3] The Court notes that the Commission requested interest calculated "in the same manner that the Internal Revenue Service uses to calculate tax underpayments under 26 U.S.C. § 6621(a)(2)." [Filing No. 132 at 38.] However, the Commission's regulation regarding "interest on sums disgorged," expressly sets the rate of interest "at the underpayment rate of interest established under Section 6621(a)(2) of the Internal Revenue Code, 26 U.S.C. 6621(a)(2)." 17 C.F.R. § 201.600. Therefore, the Commission's requested rate and the rate set by 17 C.F.R. § 201.600 are one in the same.

Mr. Cochran did not respond to the Commission's arguments regarding civil penalties.

The Securities Acts "provide for penalties that shall not exceed the greater of 'the gross amount of pecuniary gain to such defendant as a result of the violation' or a specified amount per violation." *Sec. & Exch. Comm'n v. Spark Trading Grp., LLC*, No. 2018 WL 6727349, at *3 (E.D.N.Y. Dec. 21, 2018) (quoting 15 U.S.C. § 78u(d)(3); 15 U.S.C. § 77t(d)). Pursuant to the regulations in effect during the time period at issue, this Court may impose a civil penalty of $130,000 per violation. 17 C.F.R. § 201.1001. "District courts have considerable discretion when setting the amount of a civil penalty." *Sec. & Exch. Comm'n v. Cook*, 2015 WL 5022152, at *29 (S.D. Ind. Aug. 24, 2015). "In deciding what the penalties should be, the court should consider the seriousness of the violations, the defendant's intent, whether the violations were isolated or recurring, whether the defendant has admitted wrongdoing, the losses or risks of losses caused by the conduct, and any cooperation the defendant provided to enforcement authorities." *Sec. & Exch. Comm'n v. Church Extension of Church of Church, Inc.*, 429 F. Supp. 2d 1045, 1050 (S.D. Ind. 2005).

In the Court's prior order concerning Mr. Durham, the Court looked to Mr. Durham's sentencing in determining the appropriate penalty amount and noted the "seriousness" of Mr. Durham's violations and "the immense losses caused by his conduct." [Filing No. 86 at 16.] Turning to Mr. Cochran's sentencing, the Court noted at sentencing that it was "clear that Mr. Durham was running the show." Transcript of Sentencing Proceedings, 156, *U.S. v. Durham, et al.*, No. 1:11-cr-42-JMS (SD Ind. Dec. 21, 2012), ECF No. 481. The Court went onto observe that Mr. Durham's conduct was worse than Mr. Cochran's "[b]ecause he was – he turned on the tap and spent this money like it was nobody's business. But [Mr. Cochran] didn't do much better, and [was] living well beyond [his] means." *Id.* at 156. The Court went on to note that it had "to

consider sort of the nerve" that Mr. Cochran "showed in lying" to the victim's faces, that Mr. Cochran was "the guy that bragged about it in that one phone call talking about [his] gift of gab." *Id*. at 157. The Court further observed that many of the victims "recounted conversations" where Mr. Cochran "made representations to them about the solvency of Fair and the safety of their investment, personal conversations. And in that way," the Court observed, Mr. Cochran was "unique" and "different than Durham." *Id*. at 157. Before imposing sentence, the Court concluded that Mr. Cochran had committed "a very serious crime," and that his "efforts to distort the truth," and "willingness to lie," indicated that he didn't respect the law. *Id*. at 158. Mr. Cochran was ultimately sentenced to twenty-five years imprisonment – half of the sentence imposed upon Mr. Durham.

Based on the forgoing, the Court determines that Mr. Cochran should pay a civil penalty in the amount of $65,000 – or half of the $130,000 per violation that the Court imposed upon Mr. Durham. However, this still leaves open a determination of how many violations Mr. Cochran committed. It would be within the Court's discretion to impose penalties by looking behind each of Mr. Cochran's eight convictions for separate violations, see, e.g., *Church of God*, 429 F. Supp. 2d at 1051 (noting that the evidence was sufficient to support a finding of at least one violation for each Offering Circular), but at some point the futility of collection must be acknowledged. Accordingly, the Court exercises its considerable discretion in setting the amount of the civil penalty against Mr. Cochran at $65,000 for each of his separate convictions, amounting to a total penalty of $520,000.

Therefore, the Commission's Motion for Summary Judgment is **GRANTED** as it relates to its arguments concerning civil penalties and the Court **ORDERS** Mr. Cochran to pay civil penalties in the amount of **$520,000**.

### E.  Acting as an Officer or Director

Lastly, the Commission requests that this Court bar Mr. Cochran from serving as an officer or director "of an issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act." [Filing No. 132 at 40.]  The Commission argues that "all of the factors support a permanent officer and director bar," in that Mr. Cochran "served as an executive officer of Fair throughout this fraud," "played a central role in the fraud and made repeated misrepresentations and omissions to investors over a multi-year period," had a high level of scienter, and "benefitted personally from the fraud, using millions of Fair investor dollars to fund other business ventures and pay for his extravagant lifestyle."  [Filing No. 132 at 41.]

Mr. Cochran did not respond to the Commission's arguments as to this issue.

The Court, having conclusively determined that Mr. Cochran violated the Securities Acts, has jurisdiction to permanently enjoin Mr. Cochran from acting as an officer or director pursuant to 15 U.S.C. § 77t(b), 15 U.S.C. § 77t(e), and 15 U.S.C. § 78u(d).  "In determining whether to order the bar, a court may consider: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur."  *S.E.C. v. Black*, 2008 WL 4394891, at *21 (N.D. Ill. Sept. 24, 2008) (citations and quotations omitted).  The Court has considered many of these factors throughout this Order and notes that, with the exception of repeat offender status, the remaining factors weigh in favor of barring Mr. Cochran from serving as an officer or director consistent with the Securities Acts.  As such, the Commission's Motion for Summary

Judgment is **GRANTED** as to this issue and Mr. Cochran is permanently **ENJOINED** from acting

as an officer or director pursuant to 15 U.S.C. § 77t(b), 15 U.S.C. § 77t(e), and 15 U.S.C. § 78u(d).

**IV.**
**CONCLUSION**

For the reasons set forth herein, the Commission's Motion for Summary Judgment, [131],

is **GRANTED** and the Commission's requested relief is **GRANTED** as follows:

- Mr. Cochran is permanently **ENJOINED** from future violations of the Securities Acts as set forth in Part III.B;

- Mr. Cochran is **ORDERED** to pay disgorgement in the amount of **$2,349,910.03**, plus prejudgment interest at the rate set forth in 17 C.F.R. § 201.600 as set forth in Part III.C

- Mr. Cochran is **ORDERED** to pay a civil penalty in the amount of **$520,000** as set forth in Part III.D; and

- Mr. Cochran is permanently **ENJOINED** from acting as an officer or director as set forth in Part III.E.

In addition, Mr. Cochran's "Motion Report as to Status of Settlement Negotiations with

Securities and Exchange Commission," [128], is **DENIED AS MOOT**.

Final Judgment shall issue accordingly.

Date: 2/26/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

TIMOTHY S. DURHAM
60452-112
MCCREARY - USP
MCCREARY U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 3000
PINE KNOT, KY 42635

18

JAMES F. COCHRAN
#09970-028
LEXINGTON - FMC
LEXINGTON FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 14500
LEXINGTON, KY 40512

Jennifer Chun Barry
U.S. SECURITIES AND EXCHANGE COMMISSION (Philadelphia)
barryj@sec.gov

Scott Alexander Thompson
U.S. SECURITIES AND EXCHANGE COMMISSION
thompsons@sec.gov